IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK PENNING and <br> VICKI PENNING, <br>   Plaintiffs, <br> v. <br> C.A.T., INC., <br> Serve at: 4 Rue Du Transport <br>       Coteau-du-Lac <br>       Quebec, Canada J0P1B0, <br> RYDER TRUCK RENTAL <br> CANADA, LTD., <br> Serve at: 700 Creditstone Rd. <br>       Concord, ON L4K5A5, and <br> ALEXANDRE BOURCIER, <br> Serve at: 45 Rue Des Cerisiers <br>       Rivier-Beaudette, PQ J0P1R0, <br>   Defendants. | Case No: 22-cv-2241 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW, Plaintiffs Mark and Vicki Penning, husband and wife, by and through counsel, Scott D. Kehlenbrink, Rusty K. Reinoehl, and Reinoehl Kehlenbrink, LLC, and hereby file their Complaint against Defendants C.A.T., Inc. ("CAT"), Ryder Truck Rental Canada, Ltd. ("Ryder"), and Alexandre Bourcier ("Bourcier"), and in support hereof, states as follows:

### PARTIES, VENUE, AND JURISDICTION

1. At all times relevant hereto, Plaintiffs Mark and Vicki Penning were and remain citizens of the State of Missouri and were and are legally married.

2. Defendant CAT is a foreign for-profit motor carrier headquartered in Quebec, Canada. CAT is authorized to do business in the State of Illinois, is subject to the jurisdiction of and venue in this Court, and may be served at its headquarters in Quebec, Canada.

3. Defendant Ryder is a foreign for-profit corporation headquartered in Concord, Ontario.

Ryder is authorized to do business in the State of Illinois and may be served at its headquarters in Concord, Ontario.

4. Defendant Bourcier is a resident of Canada who may be served at his residence 45 Rue Des Cerisiers, Rivier-Beaudette, PQ J0P1R0.

5. The subject of this lawsuit is a tractor-trailer collision which occurred in Jefferson County, Illinois.

6. The amount in controversy exceeds $75,000.00 exclusive of interests and costs.

7. There is complete diversity of the parties.

8. This Court has jurisdiction pursuant to 28 U.S.C. Section 1332.

9. Venue is proper in this Court pursuant to 28 U.S.C. Section 1391(b)(2), as a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

**FACTUAL AVERMENTS**

10. On October 1, 2020, Defendant Bourcier was an employee of Defendant CAT and was an authorized agent of Defendant Ryder.

11. On that date, Bourcier was driving a 2016 Freightliner tractor trailer owned by Defendant Ryder and leased to CAT, southbound on Interstate 57 in Jefferson County, Illinois.

12. At all relevant times, Bourcier was operating in the course and scope of his employment with CAT and agency with Ryder.

13. Bourcier approached a construction zone which had caused traffic to back up and come to a full and complete stop on Interstate 57.

14. At approximately the same time and place, Plaintiff Mark Penning was operating a 2020 Freightliner tractor trailer. Penning's vehicle was at a full and complete stop on Interstate 57 at milepost 102 as a result of the construction zone ahead.

15. As Bourcier approached milepost 102 travelling at or above highway speeds, Bourcier failed to stop the truck he was driving and slammed into the rear of the vehicle being operated by Mark Penning.

16. The truck Bourcier was operating slammed into the rear of Mark Penning's tractor trailer with such violent force that Penning and his passenger were thrown into and virtually through the firewall of Penning's truck.

17. Mark Penning was not negligent in any way which would have caused or contributed to cause this collision.

18. At all times relevant hereto, both CAT and Ryder were/are interstate commercial motor carriers engaged in the business of interstate trucking and were required to abide by and follow the Federal Motor Carrier Regulations, codified at 49 Code of Federal Regulations, Parts 40, and 325 through 399 as well as all applicable Illinois laws codified at 625 ILCS 5/1-100 through 625 ILCS 5/1-300.

19. At all times relevant hereto, Bourcier was an individual engaged in the business of truck driving and interstate trucking, and is/was required to abide by and follow Federal Motor Carrier Regulations, codified at 49 Code of Federal Regulations, Parts 40, and 325 through 399 as well as all applicable Illinois laws codified at 625 ILCS 5/1-100 through 625 ILCS 5/1-300.

20. At all times relevant, CAT was registered with the USDOT bearing number 247969.

21. At all times relevant, Ryder was registered with the USDOT bearing number 919057.

22. At all times relevant, CAT, Ryder, and Bourcier were engaged in interstate commerce.

23. At all times relevant, CAT and Ryder individually and through its agents, servants, and/or employees were engaging in the business of an interstate motor carrier.

24. At all times relevant, the 2016 Freightliner Bourcier was operating at the time of this crash was owned by Ryder and leased to CAT, and was being operated by Bourcier in the course and scope of his employment with CAT.

25. At all times relevant, Bourcier was hauling, pulling, and/or operating a 2016 Manac 53 foot trailer bearing VIN 2M5921619G1151911 which was owned by or leased to CAT.

26. Said trailer was being hauled, pulled, and/or operated by Bourcier in the course and scope of his employment with CAT.

27. At all times relevant, both the 2016 Freightliner and the Manac trailer detailed above, qualify as "Motor Vehicles", "Commercial Motor Vehicles", and/or a "Truck Tractor" as defined by the Federal Motor Carrier Regulations at 49 CFR 390.5.

28. At all times relevant, CAT and Ryder, and their agents, servants, and/or employees, including Bourcier, were required to operate the Freightliner and Manac trailer with the "highest degree of care".

29. At all times relevant, Bourcier was hired by CAT to operate the 2016 Freightliner and attached trailer and directed by CAT to transport freight interstate.

30. At all times relevant, Bourcier caused or contributed to cause this collision, which directly and proximately caused injuries and damages to Plaintiffs.

31. The negligence of all defendants, including their agents, servants, and/or employees, including Bourcier, as described in this Complaint, directly and proximately caused and/or contributed to cause the injuries and damages sustained by Plaintiffs.

### COUNT I – MARK PENNING v. ALEXANDRE BOURCIER
### NEGLIGENCE AND NEGLIGENCE *PER SE* OF DEFENDANT BOURCIER

32. Plaintiff re-alleges and incorporates by reference all allegations contained in paragraphs 1-31 as if set forth fully herein.

33. At all times relevant, Bourcier owed a duty to Plaintiff to exercise the highest degree of care under the circumstances then and there existing, in the operation of the Freightliner and Manac to protect the safety of Mark Penning and others, all of which are imposed upon Bourcier by the Federal Motor Carrier Safety Regulations.

34. At all times relevant, including the time leading up to this crash, Bourcier was negligent, reckless, and/or careless in the following respects:

    a. Failed to keep a careful lookout ahead, laterally ahead, and behind;

    b. Failed to operate the Freightliner and Manac in a careful and prudent manner;

    c. Drove too fast for conditions in violation of Illinois law;

  d. Failed to proceed with caution when approaching a construction zone;

  e. Failed to proceed with caution when approaching slowing or stopped traffic;

  f. Failed to take proper remedial action which could have avoided this collision or minimized the impact;

  g. Failed to reduce speed to avoid a rear-end collision;

  h. Failed to keep his Freightliner tractor under control at all times;

  i. Operated his commercial motor vehicle without adequate training and experience as imposed upon him by 49 C.F.R. 383.110;

  j. Operated the commercial motor vehicle when not properly qualified;

  k. Failing to exhibit the qualities of a professional driver;

  l. Driving while tired/fatigued;

  m. Driving while under the unsafe side effects of a prescription medication;

  n. Driving overly aggressive;

  o. Failing to utilize defensive driving tactics;

  p. Failing to maintain a safe following distance behind other motorists;

  q. Failing to maintain a speed that was safe given the existing road conditions;

  r. Failing to warn Plaintiff of the impending collision so that he could brace for impact;

  s. Failing to stop his vehicle, slacken his speed, swerve or sound a warning in an attempt to avoid colliding with the Plaintiff's vehicle when he could have done so in the exercise of the highest degree of care;

  t. Operated the Freightliner while using a cellular telephone without a handsfree device in violation of Federal Motor Carrier Regulations and state law.

35. Additionally, Bourcier was issued a citation for violating 625 ILCS 5/11-601(a).

36. Defendant's failure to reduce his speed or come to a stop in order to avoid the collision was a violation of Illinois Vehicle Code and Illinois Rules of the Road, in particular, 625 ILCS 5/11-601(a).

37. Said Section of the Illinois Code was enacted and intended to preserve life and prevent

bodily injury to persons traveling upon public roadways in the State of Illinois.

38. While traveling on a public roadway in the State of Illinois, Plaintiff was within the class of persons for whose benefit the laws and regulations of the Illinois Code was passed. Defendant was therefore negligent *per se* in violating Section 11-601(a) of the Illinois Code.

39. Bourcier failed to appear for his court-proceedings and was thereby convicted of the citation referenced herein.

40. Bourcier's operation of his vehicle in violation of 625 ILCS 5/11-601(a) is prima facie evidence of Bourcier's negligence in this collision.

41. At least one of the negligent acts or omissions by Defendant Bourcier, as described in the above paragraphs and the below paragraphs, was a direct a proximate cause of the crash at issue and the resulting severe injuries to Plaintiff.

42. Defendant Bourcier knew or should have known that his conduct as described herein created a high degree of probability of injury.

43. Defendant Bourcier was not properly qualified to operate the Freightliner and Manac and did not have the required training and experience and was operating in violation of the law and this behavior and conduct was reckless and shows a complete indifference and conscious disregard for the safety of the motoring public.

44. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning was caused to sustain physical, mental, and emotional injuries, both past and future, including but not limited to injury to his bilateral shoulders, hands, head, back and neck. These injuries have caused, and will continue to cause, Plaintiff to incur medical expenses in the past and into the future.

45. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning has and will continue to incur loss of wages and benefits now and into the future.

46. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark

Penning has sustained a loss of earning capacity and will continue to sustain a loss of earning capacity into the future.

47. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning is at an increased risk of future medical complication and medical treatment as a result of his injuries.

48. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning has suffered pain and suffering and will continue to suffer into the future.

WHEREFORE, Plaintiff Mark Penning pays for judgment against Defendant Alexandre Bourcier in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as fair and reasonable to compensation plaintiff for his injuries, costs, and for such other relief as this Court deems just and proper.

## COUNT II – MARK PENNING v. CAT and RYDER
## VICARIOUS LIABILITY *RESPONDEAT SUPERIOR*

49. Plaintiff restates and incorporates the allegations contained in Paragraphs 1-48 above as if fully set forth herein.

50. While operating the Freightliner owned by Ryder and leased to CAT, Bourcier was negligent, reckless, and/or careless in the following respects:

    a. Failed to keep a careful lookout ahead, laterally ahead, and behind;

    b. Failed to operate the Freightliner and Manac in a careful and prudent manner;

    c. Drove too fast for conditions in violation of Illinois law;

    d. Failed to proceed with caution when approaching a construction zone;

    e. Failed to proceed with caution when approaching slowing or stopped traffic;

    f. Failed to take proper remedial action which could have avoided this collision or minimized the impact;

    g. Failed to reduce speed to avoid a rear-end collision;

    h. Failed to keep his Freightliner tractor under control at all times;

    i. Operated his commercial motor vehicle without adequate training and experience as imposed upon him by 49 C.F.R. 383.110;

    j. Operated the commercial motor vehicle when not properly qualified;

    k. Failing to exhibit the qualities of a professional driver;

    l. Driving while tired/fatigued;

    m. Driving while under the unsafe side effects of a prescription medication;

    n. Driving overly aggressive;

    o. Failing to utilize defensive driving tactics;

    p. Failing to maintain a safe following distance behind other motorists;

    q. Failing to maintain a speed that was safe given the existing road conditions;

    r. Failing to warn Plaintiff of the impending collision so that he could brace for impact;

    s. Failing to stop his vehicle, slacken his speed, swerve or sound a warning in an attempt to avoid colliding with the Plaintiff's vehicle when he could have done so in the exercise of the highest degree of care;

    t. Operated the Freightliner while using a cellular telephone without a handsfree device in violation of Federal Motor Carrier Regulations and state law.

51. At all times relevant, CAT and Ryder had the right to control the manner in which Bourcier transported the load and operated the tractor trailer involved in the crash at issue.

52. Bourcier, Bourcier was acting within the course and scope of his employment and/or agency with Ryder and CAT, and therefore, Ryder and CAT are vicariously liable for the actions of Bourcier, including his negligence and the damages caused to Plaintiff as a result of said negligence.

53. Defendants CAT and Ryder are vicariously liable for the negligent actions of Defendant Bourcier under the doctrines of *respondeat superior*, agency, and/or statutory employment pursuant to 49 C.F.R. 390.5.

54. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark

Penning was caused to sustain physical, mental, and emotional injuries, both past and future, including but not limited to injury to his bilateral shoulders, hands, head, back and neck. These injuries have caused, and will continue to cause, Plaintiff to incur medical expenses in the past and into the future.

55. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning has and will continue to incur loss of wages and benefits now and into the future.

56. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning has sustained a loss of earning capacity and will continue to sustain a loss of earning capacity into the future.

57. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning is at an increased risk of future medical complication and medical treatment as a result of his injuries.

58. As a direct and proximate result of Defendant Bourcier's negligence, Plaintiff Mark Penning has suffered pain and suffering and will continue to suffer into the future.

WHEREFORE Plaintiff Mark Penning pays for judgment against Defendants Ryder and CAT in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as fair and reasonable to compensation plaintiff for his injuries, costs, and for such other relief as this Court deems just and proper.

## COUNT III – MARK PENNING v. CAT and RYDER
## NEGLIGENT HIRING, TRAINING, RETENTION, and SUPERVISION

59. Plaintiff restates and incorporates the allegations contained in Paragraphs 1-58 above as if fully set forth herein.

60. At all times relevant hereto, CAT and Ryder were operating as for-hire interstate motor carriers.

61. At all times relevant hereto, including at the time of this crash, CAT and Ryder were

acting individually and through its agents, servants, and employess, including Bourcier, each of whom were acting in the course and scope of their employment with CAT and Ryder.

62. At all times relevant hereto, including at the time of this crash, Bourcier was operating the Freightliner and Manac in furtherance of the business interests of CAT and Ryder.

63. At all times relevant hereto, including at the time of this crash and times leading up to it, CAT and Ryder owed a duty to the motoring public and others to use the highest degree of care under the circumstances in operating the Freightliner and Manac, the hiring, training, supervising, retaining, and controlling its agents, servants, and/or employees, including Bourcier, in the following ways which are imposed upon CAT and Ryder by the Federal Motor Carrier Safety Regulations:

   a. Adequately evaluating performance, including thorough training and supervision, so as to discharge any incompetent or negligent applicant, agent, servant, and/or employee before he/she injured the motoring public;

   b. Properly screening its applicants, including for employment;

   c. Obtaining a completed employment application before permitting an agent, servant, and/or employee to operate a commercial motor vehicle under its authority;

   d. Investigating the agents, servants, and/or employees' driver's employment records; and

   e. Inquiring into its agents, servants, and/or employee's driving record within 30 days after the employment begins.

64. That leading up to this crash and at the time of the crash, CAT and Ryder failed to carry out the duties imposed upon them and were thereby negligent in the following respects:

   a. Failed to make a reasonable inquiry and/or screen Bourcier's competence as a tractor trailer driver;

   b. Selected Bourcier for employment, who was an incompetent and unfit driver;

   c. Failed to select a competent and fit driver;

   d. Hired and retained Bourcier, an unsafe and unqualified driver;

   e. Hired and retained Bourcier, an inadequately trained and incompetent driver;

f. Allowed Bourcier to operate a mechanically defective tractor and trailer;

g. Allowed Bourcier to operate an unsafe tractor and trailer;

h. Entrusted the tractor and trailer to Bourcier, an incompetent, reckless, unsafe and unqualified driver;

i. Permitted Bourcier to operate the tractor trailer in excess of the hours of service provisions of Title 49, Code of Federal Regulations, Section 395;

j. Permitted Bourcier to operate the tractor trailer without appropriately equipped citizens' band ("CB") radio and/or a handsfree device for use with a cellular telephone;

k. Failed to properly train Bourcier in the proper operation, inspection, maintenance, record-keeping, and check-in, necessary for the safe operation of the tractor trailer and Manac he was operating at the time of this crash;

l. Failed to adequately evaluate Bourcier's performance through training and supervision, and failed to discharge Bourcier before he injured the general motoring public, including Plaintiff;

m. Failed to obtain a completed employment application before permitting Bourcier to drive a commercial motor vehicle in violation of 49 C.F.R. Section 391.21;

n. Failed to investigate Bourcier's drivers employment record during the preceding three years by all reasonable means in violation of 49 C.F.R. Section 391.23;

o. Failed to inquire into Bourcier's driving record within 30 days after his employment began in violation of 49 C.F.R. Section 391.23;

p. Failed to properly instruct and train Bourcier how to properly and safely operate a commercial motor vehicle;

q. Failed to provide safety courses to Bourcier and its other agents, servants, and employees on how to safely operate and maintain the tractor trailer involved in this incident;

r. Failed to have in place a system to keep track of the on-duty status or otherwise audit the on-duty status records of Bourcier and its other employees who operate its vehicles in interstate commerce to ensure they did not violate the limitations of the "Hours of Service Limitations" set forth in 49 C.F.R. Part 395;

s. Failed to verify Bourcier's records of hours of service;

t. Permitted and/or failed to prevent Bourcier from operating a commercial motor vehicle for periods in excess of industry standards for maximum hours of service;

u. Allowed Bourcier to operate a commercial motor vehicle in a fatigued condition and/or required, permitted and/or failed to prevent Bourcier from operating a commercial motor vehicle when he was so impaired, or likely to become impaired,

      through fatigue, as to make it unsafe for him to being or continue to operate their vehicle; and

    v. Failed to implement drug screening procedures for and/or inquire of Bourcier to determine if the drugs he was ingesting into his system would adversely affect his ability to safely operate a commercial motor vehicle.

65. That CAT and Ryder knew or should have known that its acts and/or omissions stated herein created a danger of harm to Mark Penning and others because of its failures, acts, and omissions, CAT and Ryder were thereby negligent.

66. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning was caused to sustain physical, mental, and emotional injuries, both past and future, including but not limited to injury to his bilateral shoulders, hands, head, back and neck. These injuries have caused, and will continue to cause, Plaintiff to incur medical expenses in the past and into the future.

67. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning has and will continue to incur loss of wages and benefits now and into the future.

68. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning has sustained a loss of earning capacity and will continue to sustain a loss of earning capacity into the future.

69. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning is at an increased risk of future medical complication and medical treatment as a result of his injuries.

70. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning has suffered pain and suffering and will continue to suffer into the future.

    WHEREFORE, Plaintiff Mark Penning pays for judgment against Defendants CAT and Ryder in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as fair and reasonable to compensation plaintiff for his injuries, costs, and for such other relief as this Court deems just and proper.

## COUNT IV – MARK PENNING v. CAT and RYDER
## INDEPENDENT NEGLIGENCE OF CAT AND RYDER

71. Plaintiff restates and incorporates the allegations set forth in paragraphs 1-70 as if set forth fully herein.

72. Throughout their existence, CAT and Ryder has, or should have been, aware of the existence of the Federal Motor Carrier Safety Regulations.

73. As an interstate motor carrier, CAT and Ryder had a duty to follow and comply with the Federal Motor Carrier Safety Regulations.

74. The various safety regulations included within Parts 385, 390, 391, 392, 393, 395, and 396, of which Defendants had a duty to follow, include, but are not limited to, the following:

a. Defendants had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor Carrier Safety Regulations. 49 C.F.R. §390.11;

b. Defendants had a duty to not require or permit a driver, including Defendant Smith, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3;

c. Defendants had a duty to not allow or permit a driver, including Defendant Smith, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle. 49 C.F.R. §391.11.;

d. Defendants had an independent duty not to aid, abet, encourage or require any of its employees to violate the safety regulations contained within Chapter 390. 490 C.F.R. §390.13;

e. Defendants had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and furnished to Defendants an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b);

f. Defendants had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23;

g. Defendants had an independent duty to obtain the motor vehicle

      record of every driver it employs, including Defendant Smith, at least once every twelve months in determine whether that driver continues to meet the minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle.  49 C.F.R. §391.25;

h. Defendants had an independent duty require each of its drivers, including Defendant Smith, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months.  49 C.F.R. §391.27;

i. Defendants had an independent duty to prohibit its employees, including Defendant Smith, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test. 40. C.F.R. §391.31;

j. Defendants had an independent duty to ensure that its drivers, including Defendant Smith, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations.  40 C.F.R. §391 – Subpart E; and

k. Defendants had an independent duty to inspect, repair, and maintain all of the motor vehicles subject to its control, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the relevant crash. 40 C.F.R. Section 396.3.

75. That Defendants had a duty to comply with the Federal Motor Carrier Safety Regulations including the specific aforementioned regulations.

76. That it is customary and standard in the motor carrier industry to have in place an adequate safety program administered by competent and adequately trained safety personnel to ensure that the motor carrier and its drivers are adhering to the Federal Motor Carrier Safety Regulations, including but not limited to the aforementioned regulations.

77. That at all times prior to the subject collision, Defendants failed to have in place an adequate safety program.

78. As a result of it's inadequate or nonexistent safety program, Defendants violated

numerous Federal Motor Carrier Safety Regulations including, but not limited to, the aforementioned regulations.

79. As a result of its inadequate or nonexistent safety program, Defendants allowed their drivers, including Defendant Bourcier, to violate numerous Federal Motor Carrier Safety Regulations including, but not limited to the aforementioned regulations.

80. That Defendants' violation of numerous regulations created a danger to the health, welfare, and safety of the motoring public including Plaintiff.

81. Defendants were thereby negligent in that they failed to implement an adequate safety program in violation of numerous federal regulations.

82. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning was caused to sustain physical, mental, and emotional injuries, both past and future, including but not limited to injury to his bilateral shoulders, hands, head, back and neck. These injuries have caused, and will continue to cause, Plaintiff to incur medical expenses in the past and into the future.

83. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning has and will continue to incur loss of wages and benefits now and into the future.

84. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning has sustained a loss of earning capacity and will continue to sustain a loss of earning capacity into the future.

85. As a direct and proximate result of Defendants' negligence, Plaintiff Mark Penning is at an increased risk of future medical complication and medical treatment as a result of his injuries.

86. As a direct and proximate result of Defendants' negligence, Plaintiff Mark

Penning has suffered pain and suffering and will continue to suffer into the future.

WHEREFORE, Plaintiff Mark Penning pays for judgment against Defendants CAT and Ryder in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as fair and reasonable to compensation plaintiff for his injuries, costs, and for such other relief as this Court deems just and proper.

## COUNT V – VICKI PENNING
## LOSS OF CONSORTIUM AGAINST ALL DEFENDANTS

87. Plaintiff restates and incorporates the allegations contained in paragraphs 1-86 as if set forth fully herein.

88. At all times relevant, Vicki Penning was and is the lawfully wedded spouse of Plaintiff Mark Penning.

89. As a direct and proximate result of the acts and omissions of Defendants, as set forth above, and as the result of the extremely serious and permanent injuries suffered by his wife, Plaintiff Vicki Penning has lost the care, comfort, society, companionship, financial support, and consortium of her husband and will continue to do so in the future.

90. As a direct and proximate Result of the acts and omissions of Defendants, as set forth above, and as the result of the extremely serious and permanent injuries suffered by his wife, Plaintiff Vicki Penning has sustained wage loss, both past and future.

WHEREFORE, Plaintiff Vicki Penning prays for judgment against Defendants Bourcier, CAT and Ryder in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of costs and interest, as fair and reasonable to compensation plaintiff for her injuries, costs, and for such other relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury in this Cause.

REINOEHL KEHLENBRINK, LLC

 /s/ Scott D. Kehlenbrink
Scott D. Kehlenbrink, #6298465
Rusty K. Reinoehl, #6295384
Reinoehl Kehlenbrink, LLC
1331 Jeffco, Suite 4
Arnold, MO 63010
P: (314) 561-7107
F: (636) 321-8875
rusty@rklegalgroup.com
scott@rklegalgroup.com
Attorneys for Plaintiffs